**In re REFINE CONSTRUCTION CO., INC., Debtor.**

**Bankruptcy No. 193–20187–352.**

United States Bankruptcy Court, E.D. New York.

Dec. 30, 1994.

---

Howard J. Diller, New York City, for debtor.

James V. Simmonds, Yonkers, NY, for Howard J. Diller.

Department of Justice, Office of U.S. Trustee by Alfred Dimino, U.S. Trustee, Garden City, NY.

**Decision on F.R.B.P. 9011 Sanctions**

MARVIN A. HOLLAND, Bankruptcy Judge.

This decision addresses the imposition of sanctions pursuant to Fed.R.Bankr.P. 9011 (hereinafter, "Rule 9011"). For the reasons that follow, we find the Debtor's former attorney, Howard J. Diller, Esq. (hereinafter, "Diller"), subject to sanctions.

This proceeding is subject to the bankruptcy court's jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) and the Order of Referral of Matters to Bankruptcy Judges of this district. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

*FACTS*

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on December 2, 1993. On February 17, 1994, Diller filed an *ex-parte* application and proposed order seeking to dismiss the Debtor's Chapter 11 case. The entire application reads as follows:

"The debtor requests of the Court as follows:

1) Pursuant to Rule 9013 of the United States Code, the debtor hereby requests that the Court execute the accompanying order dismissing the Chapter 11 Case.

2) This application is supported by 11 U.S.C. Section 1307(b) which expressly states that, 'On request of the debtor at any time, if the case has not been converted under section 706, 112 [sic] or 1208 of this title, the Court shall dismiss a case under this chapter.'

NOW THEREFORE; on the grounds stated above, the debtor requests that the Court dismiss the Chapter 11 case for cause shown."

After review of the application, this Court, upon its own initiative, by notice and order dated March 21, 1994, set a hearing date to consider the applicability of Rule 9011.

*DECISION*

■ Rule 9011 provides in pertinent part:

(a) Signature. Every petition, pleading, *motion and other paper* served or filed ... shall be signed by at least one attorney of record ... The signature of an attorney ... constitutes a certificate that the attorney ... has read the document; *that to the best of the attorney's ... knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law* ... If a document is signed in violation of this rule, the court on motion *or its own initiative,* shall impose on the person who signed it ... an appropriate sanction ... [emphasis added].

Fed.R.Bankr.P. 9011(a).

At the hearing, it was established that Diller had signed the application in his capacity as Debtor's attorney. By signing the application, Diller certified that he had fulfilled his affirmative duty under Rule 9011 to conduct a "reasonable inquiry" and that the application was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

■ The standard for evaluating the propriety of a signer's conduct under Rule 9011 is an objective standard. *See, e.g., In re*

*Mergenthaler,* 144 B.R. 632, 634 (Bankr. E.D.N.Y.1992) ("An objective standard is employed in the imposition of sanctions pursuant to Rule 9011."). "Moreover, the objective standard is that of a reasonable inquiry by a competent attorney." *Id.* "Thus, it is no longer enough for an attorney to claim that he acted in good faith or that he was personally unaware of the groundless nature of a fact stated in a submission which he signed." *Id. (quoting, In re Jerrels,* 133 B.R. 161, 164 (Bankr.M.D.Fla.1991)).

It is clear that Diller did not undertake the reasonable inquiry required by Rule 9011.

The Application cites as authority for the relief requested therein 11 U.S.C. § 1307(b). While 11 U.S.C. § 1307(b) gives a *Chapter 13* debtor the right to have his/her case dismissed [unless the case previously had been converted under 11 U.S.C. §§ 706, 1112, or 1208], that section is totally inapplicable in this *Chapter 11* case. 11 U.S.C. § 103(h).

■ There is no provision in Chapter 11 similar to 11 U.S.C. § 1307 giving a debtor an absolute right of dismissal. 11 U.S.C. § 1112(b) of the Bankruptcy Code, the Chapter 11 dismissal section which was not addressed in the application, provides that "on request of a party in interest ... *and after notice and a hearing,* the court may ... dismiss a case ... for cause ..." [emphasis added]. While a Chapter 11 debtor may be a "party in interest" for purposes of 11 U.S.C. § 1112(b), *see, e.g., In re Page,* 118 B.R. 456 (Bankr.N.D.Tex.1990), Fed.R.Bankr.P. 1017(a) provides that "[e]xcept as provided in §§ 707(b), 1208(b), and 1307(b) of the Code, a case shall not be dismissed on motion of the petitioner ... prior to a hearing on notice as provided in Rule 2002." Fed.R.Bankr.P. 2002 requires 20 days' notice to all creditors of a hearing to dismiss a Chapter 11 case. Even the most perfunctory inquiry would have revealed that an *ex parte* application under 11 U.S.C. § 1307 could not entitle the Debtor to the relief sought.

At the Hearing, counsel appearing on behalf of Diller was given the opportunity to explain what reasonable inquiry was made by Diller to satisfy the requirements of Rule 9011. A copy of the transcript of the hearing appears as an appendix to this decision.

With respect to the *ex parte* nature of the application, counsel acknowledged that "the procedure was entirely misguided." In response to the court's question "what was the reasonable inquiry made by the person who signed that document for representing that it was well grounded in fact, warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law", Diller's counsel stated "Your Honor, the miscitation of what would be the pertinent statute is only explained by law office failure." In other words, there was no inquiry.

There is a crisis in this Court. We have reached the point where shortly we will be unable to keep current with the caseload. The Eastern District of New York embraces the counties of Brooklyn, Queens, Staten Island, Nassau, and Suffolk. The six regular, full-time bankruptcy judges regularly assigned to this district[1] service a community which constitutes just short of 50 per cent of the entire population of the State of New York.

According to figures supplied by the Chief Deputy Clerk of the Court in a memorandum dated December 21, 1994, as of December 31, 1988 each bankruptcy judge in this district had an average pending case load of 1065 bankruptcy cases and 99 adversary proceedings.[2] During the year 1988, 6388 bankruptcy cases and 592 adversary proceedings were filed. During that year each of the bankruptcy judges of this district was authorized one secretary and one regular law clerk.[3]

As of December 31, 1989, each bankruptcy judge in this district had an average pending case load of 1423 bankruptcy cases and 102 adversary proceedings. During the year 1989, 8540 bankruptcy cases and 614 adversary proceedings were filed. During that year each of the bankruptcy judges of this district was authorized one secretary and one regular law clerk.

As of December 31, 1990, each bankruptcy judge in this district had an average pending case load of 2436 bankruptcy cases and 158 adversary proceedings. During the year 1990, 14,076 bankruptcy cases and 945 adversary proceedings were filed. During that year, each of the bankruptcy judges of this district was authorized one secretary and one regular law clerk.

As of December 31, 1991, each bankruptcy judge in this district had an average pending case load of 3423 bankruptcy cases and 246 adversary proceedings. During the year 1991, 20,539 bankruptcy cases and 1475 adversary proceedings were filed. During that year, each of the bankruptcy judges of this district was authorized one secretary and one regular law clerk.

As of December 31, 1992, each bankruptcy judge in this district had an average pending case load of 3478 bankruptcy cases and 288 adversary proceedings. During that year, 20,856 bankruptcy cases and 1728 adversary proceedings were filed. During that year, each of the bankruptcy judges of this district was authorized one secretary and one law clerk.

As of December 31, 1993, each bankruptcy judge in this district had an average pending case load of 3375 bankruptcy cases and 251 adversary proceedings. During the year 1993, 20,142 bankruptcy cases and 1505 adversary proceedings were filed. During that year, each of the bankruptcy judges of this

1. Since February 1, 1993 The Honorable Edward J. Ryan has been sitting in Westbury as a recall bankruptcy judge. He has been assigned a total of 408 bankruptcy cases and 144 adversary proceedings from what would otherwise be cases assigned to some, but not all, of the six full-time bankruptcy judges regularly assigned to this district. Only five of the cases assigned to Judge Ryan have been part of what otherwise would have been the responsibility of the undersigned.

2. The exact number of cases pending at year's end for each individual judge of this district is unavailable except for the current year. The term "average pending case load" therefore re-

fers to the number of cases pending in the Court divided by the number of judges permanently assigned to this district.

3. From time to time, the Chief Bankruptcy Judge has been authorized a temporary additional law clerk to assist him in his administrative duties; during a 10–month period spanning 1992 and 1993, each of the bankruptcy judges of this district was authorized one temporary additional law clerk; and on rare occasion an individual bankruptcy judge of this district has been authorized a temporary additional law clerk.

district was authorized one secretary and one regular law clerk.

As of December 21, 1994, there had been 20,733 bankruptcy cases filed in this district this year, and there were 21,627 cases pending in this district. Assigned to the undersigned as of that date were 2700 Chapter 7 cases, 250 Chapter 11 cases, 1175 Chapter 13 cases, and 219 adversary proceedings.

The Clerk's Office is now staffed at 84 per cent of the number called for by the staffing formula promulgated by The Administrative Office of the U.S. Courts. Although that formula calls for 127 Deputy Clerks, current Administrative Office policy only permits 107, of which only 105 will be engaged. Taking into account absences occasioned by annual leave, sick leave, and family medical leave, the number of people actually on the job and working on any particular day is, on the average, approximately 75 per cent of what the staffing formula calls for.

However, the explosive increase in case filings and the severe personnel shortage would not by themselves impair the proper, prompt, efficient, and effective case disposition to which the public is entitled. By personal estimate, two-thirds of all cases occupy far less than one-third of all judicial and clerical time. This disproportionate burden is occasioned by a small minority of lawyers who are ill-trained, unseasoned, unmotivated, and undedicated; lawyers who have practiced only in state courts and who blindly assume that procedure in this Court is identical to that to which they are accustomed; lawyers with the temerity to represent a client in need before a court of highly-specialized jurisdiction and procedure without first having familiarized themselves with the basic fundamentals of bankruptcy practice. It is only this burden that we find ourselves unable to handle.

It is obvious not only that "reasonable inquiry" was not made by Diller, no inquiry was made. Behavior of this sort is not only offensive, it seriously impairs the ability of this Court to fulfill its statutory mandate and thus cries out for sanctions. Accordingly, we hold that the certification implicit in Diller's signature pursuant to Rule 9011 was violated and we are therefore required to impose an appropriate sanction. The only question to be addressed is its magnitude.

In the past, instances such as we now have before us have generally been dealt with by scheduling a hearing and eliciting from the offending attorney a promise of greater professionalism. However, the frequency of such incidents has been growing at an even faster than the overall case load. The time has come to put on notice that small segment of the bar that may be characterized by the profile related above that neither the judicial nor the clerical personnel of this Court will be prevented from their dedicated pursuit of public service by professionals unable or unwilling properly to represent their clients, and unable or unwilling first to educate themselves in the proper manner by which this should be done.

■ Accordingly, pursuant to 11 U.S.C. § 105 and Rule 9011, commencing immediately, respondent is prohibited from further practice before this Court until he has filed with the Clerk of the Court a statement under penalty of perjury attesting that: (1) he has read and has familiarized himself with Title 11 of the U.S. Code (The Bankruptcy Code) together with all current amendments, (2) he has read and has familiarized himself with the Federal Rules of Bankruptcy Procedure together with all current amendments, (3) he has read and familiarized himself with the Local Rules of the United States Bankruptcy Court for the Eastern District of New York together with all current amendments, and (4) he has enrolled in, and has remained in constant attendance, at either one 2–day or two 1–day courses in basic bankruptcy law and procedure. The dates of attendance, starting and ending times of, and names of the lecturers at the course or courses shall be stated.

None of the foregoing should be construed as an indictment of the bar in general. This Court readily acknowledges that this decision is addressed to a small minority of those lawyers who practice before it and gratefully recognizes that the high degree of professionalism displayed by the majority of its bar is one of the most rewarding aspects of its duties.

APPENDIX

TRANSCRIPT OF PROCEEDINGS

April 7, 1994

THE COURT: Number 5, Refine Construction Company, Inc.

MR. SIMMONDS: Howard J. Diller, for the Debtor, by James Simmonds and Howard Diller. This is your Honor's motion to consider sanctions with respect to motion improperly brought *ex parte* to dismiss a Chapter 11. I have recently taken over responsibility in the office for the file. I have been acknowledged this is brought on 25 days' notice to all parties.

THE COURT: Are you Mr. Diller, Sir?

MR. DILLER: I am he.

THE COURT: Okay.

MR. SIMMONDS: The Debtor has obtained refinancing shortly after the filing, and his secured creditor, with whom he has had litigation, and on the eve of foreclosure the debtor filed, has agreed to reduce the indebtedness $40,000, and in every respect an accord has been made, and the Debtor wishes, upon a proper application, to dismiss the case so that he can obtain his refinancing to meet his obligations.

THE COURT: The first thing I want to do before I get there. I want to address my Order to Show Cause with regard to 9011 sanctions.

I have before me an application and Order to Dismiss which, in the notice that I sent you was set forth, and I will set forth again on the record. I quote, "The Debtor requests of the Court as follows:

One, pursuant to Rule 9013 of the United States Code, the Debtor hereby requests that the Court execute the accompanying order dismissing the Chapter 11 case.

Two, this application is supported by 11 U.S.C. Section 1307(b) which expressly states on request of the Debtor at any time if the case has not been converted under Section 706(112), or 1208 of this title, the Court shall dismiss the case under this chapter.

Now, therefore, on the grounds stated above, the Debtor requests that the Court dismiss the Chapter 11 case for cause shown, dated New York City, New York, 17th day of March, 1994."

There is a signature that I can't read, but underneath it is typed the name Howard J. Diller, Attorney for the Debtor.

MR. SIMMONDS: Yes, your Honor, that is the application which I spoke of, which in its form was entirely misguided to bring a motion *ex parte*, and incorrectly citing the Chapter 13 dismissal statute, rather than the Chapter 11.

THE COURT: So the record is crystal clear, there is no similar provision in 1112 giving the Debtor an absolute right.

MR. SIMMONDS: Correct, your Honor, there is no absolute right, and thus it must be made known to all creditors, and the trustee on proper notice, and we apologize for the inappropriate procedure in bringing that motion on, and we would hope for leave to properly bring such a motion.

THE COURT: Sir, I ask you, and I am referring now to Federal Rule of Bankruptcy Procedure 9011, what was the reasonable inquiry made by the person who signed that document for representing that it was well-grounded in fact, warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law?

MR. SIMMONDS: Your Honor, the miscitation of what would be the pertinent statute is only explained by law office failure. The office had discussed the dismissal of this case with all parties prior to the application. We feel that with no objection from any party, and certainly the creditors are in accord with the dismissal of this case, and we had discussed with the U.S. Trustee—

THE COURT: How do you have objections by creditors to an *ex parte* application?

MR. SIMMONDS: Again, the procedure was misguided. We had no objection to the creditors to dismiss this case. It was to have been on notice, and we certainly would like that opportunity to make the motion properly on notice.

THE COURT: Sir, you cite a statute that's a part of Chapter 13 which is inapplicable to this case, which gives you a right

which you don't have under the statute which is applicable in this case which is contained in Chapter 11.

You make a representation that the Debtor is entitled to the relief requested by virtue of the signature and the certification that signature mandates in Bankruptcy Rule 9011.

MR. SIMMONDS: Again, your Honor is correct in denying that motion.

THE COURT: I'm not talking about denying the motion. I am talking now about appropriate sanctions under Bankruptcy Rule 9011.

MR. SIMMONDS: With regard to that issue, your Honor, we would only assert we did not intend to deprive any creditor, or inconvenience the trustee, and we would hope to make the motion in the proper procedure and expect, and hope that the creditors and the U.S. Trustee would support our motion to dismiss this case.

THE COURT: You are talking about the motion, the substance of the motion to dismiss. I am talking about the sanctions for the manner in which it was brought. We are talking about two different subjects.

MR. SIMMONDS: Your Honor, I acknowledge your Honor's findings that the statute was incorrect citing the Chapter 13 statute, and the procedure was incorrect, and we, as Debtor's counsel can only apologize, and represent no such motion is going to be so lightly brought as to miscited dismissal statute in the future, and hope there was as little inconvenience to the Clerk's Office, and this Court as can be in such a manner.

THE COURT: This is reserved, and I want a copy of the transcript.

Now we will get to the motion.

MR. DIMINO: Your Honor, I don't know of any motion that's on the calendar today.

THE COURT: You haven't been served?

MR. DIMINO: To bring the Court up to date, this matter was converted to Chapter 7 last week. Debtor's counsel neither answered, nor appealed.

THE COURT: This has been marked off.

MR. SIMMONDS: With regard to that matter, Debtor's counsel certainly would have appeared to support the dismissal of the case, and withdrawn its motion, and again, didn't appear because on a call to chambers that the motion would be decided, a decision was pending, and it was incorrectly interpreted that a decision supporting the motion would be pending, and again, that is why it was converted.

THE COURT: Now, are you appearing of record for Mr. Diller?

MR. SIMMONDS: Yes.

THE COURT: Does the Reporter have your appearance?

MR. SIMMONDS: Yes, James Simmonds. I'm going to be basically addressing all the procedural matters in the office on this case. Mr. Diller continues to be the Attorney of Record.

THE COURT: But with regard to the motion—the Order to Show Cause for sanctions, you are the Attorney of Record on that to receive a copy of it?

MR. SIMMONDS: No, I am working in Mr. Diller's office now on several matters, and this will be one of them, and Mr. Diller, who is here today—

THE COURT: Who gets the ultimate decision on the 9011 sanctions, you or Mr. Diller?

MR. SIMMONDS: Mr. Diller.

THE COURT: Thank you.

(Whereupon, the matter was concluded.)